```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
In re:                              :
                                          Docket #1:15-cv-04091-
 BROWN, KAREN, et al.,              : PKC-GWG

                    Plaintiffs,     :

   - against -                      :

 THE CITY OF NEW YORK, et al.,      : New York, New York
                                      April 29, 2019
                    Defendants.     :

------------------------------------ :


                    PROCEEDINGS BEFORE
          THE HONORABLE JUDGE GABRIEL W. GORENSTEIN,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Plaintiffs:          LEVENTHAL LAW GROUP, P.C.
                         BY:  JASON L. LEVENTHAL, ESQ.
                         45 Main Street - Suite 528
                         Brooklyn, New York 11201
                         718-556-9600

                         BERNSTEIN CLARKE & MOSKOVITZ, PLLC
                         BY:  JOSHUA S. MOSKOVITZ, ESQ.
                         11 Park Place - Suite 914
                         New York, New York 10007
                         212-321-0087

For the Defendants:      NEW YORK CITY LAW DEPARTMENT
                         BY:  ANGHARAD WILSON, ESQ.
                         100 Church Street - Room 4-114
                         New York, New York 10007
                         212-356-2572

Transcription Service:   Carole Ludwig, *Transcription Services*
                         141 East Third Street #3E
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|

None

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|

None

```
 1                              PROCEEDINGS                    3
 2             THE CLERK:  In the matter of Brown v. The City of
 3   New York, Docket No. 15-cv-4091.
 4             Counsel, state your names for the record, please.
 5             MR. JASON LEVENTHAL:  Jason Leventhal for Karen
 6   Brown.  Good afternoon, your Honor.
 7             MR. JOSHUA MOSKOVITZ:  Joshua Moskovitz, also for
 8   the plaintiff, Karen Brown.  Good afternoon, your Honor.
 9             MS. ANGHARAD WILSON:  Angharad Wilson for the
10   defendants.  Good afternoon, your Honor.
11             HONORABLE GABRIEL W. GORENSTEIN:   All right, so I
12   have the two letters, Dockets 217 and 223.  I think it will
13   help me, whoever's speaking for plaintiffs, just to perhaps
14   go through what you view as the lacunae in the affidavits.
15             But there was one thing that made me think I could
16   short-circuit this a little bit, which was in your
17   footnote, that you want to be assured that this is the
18   efforts that were made to do the things that are described
19   and there aren't any other efforts they're not telling you
20   about; is that fair, is that what you were looking for?
21             MR. LEVENTHAL:  That's fair, Judge, yes.
22             THE COURT:  Because, you know, I think if they're
23   giving an affidavit on a topic, we can assume that's going
24   to be the limit of the information they would be allowed to
25   offer in response to any motion on that topic.  They
```

can't -- you know, they can't start saying, "Well, we made

these other efforts."  I mean, that's what the affidavits

are about.

       So, I mean, I can -- you know, I can rule that

that's my ruling is that this is everything and they'll be

precluded from offering new evidence on that topic, if it

helps.  Is that going to solve some of it, maybe?

       MR. LEVENTHAL:  Judge, I think it solves all of it

except for the issue of the preservation hold and whether

the City issued a hold or not.

       THE COURT:  And now we're talking about tapes or

something else?

       MR. LEVENTHAL:  Well, it would be -- we assume it

would be a general preservation hold that would have

affected the tapes and the Javier Fernandez notes.

       THE COURT:  Okay, so in terms -- the preservation

hold, it seems to me, matters for a spoliation argument,

right?

       MR. LEVENTHAL:  Yes.  And it also matters for the

failure to timely disclose --

       THE COURT:  That's where I'm wondering about that

because let's -- I'm not saying it happened like this --

but let's say you ask on Day 1 for a certain document.

Day 30 they produce things without the document they were

1

2 supposed to get.  And then three years later they produce

3 the document.  Okay?  So you've been you've been prejudiced

4 to some degree by that.  But what does it matter whether

5 the reason it came up three years later was something

6 internal did or did not happen vis-à-vis a preservation

7 hold?  I mean, it's three years late.  Is their argument

8 going to be different if they did a preservation hold?

9          MR. LEVENTHAL:  Will the argument be different if

10 they did a preservation hold?  I think it would be, Judge.

11 And the reason --

12          THE COURT:  I should have phrased it differently,

13 because they're not talking about a preservation -- you can

14 remain standing -- I'm addressing you.  Let me phrase it

15 differently.  They come in, and they say whatever they say

16 here about how it came about.  They don't reference a

17 preservation hold specifically as I -- or they don't

18 reference a special litigation hold.  So you will then say

19 it came three years late.  And maybe your fear is they'll

20 say, "Oh, we issued a hold and then someone didn't obey

21 it."  But they won't be able to say that because it's not

22 in here.

23          MR. LEVENTHAL:  Our argument would be that if they

24 did not issue a -- well, first, if they had issued a

25 preservation hold, we believe the documents would have been

1

2  timely produced.

3         THE COURT:  But you are free to make that

4  argument.  You are free to say, "You know what, there's no

5  excuse for this.  All they had to do was tell this person

6  or that person, and none of this would have happened -- to

7  preserve any documents relating to the incident -- and none

8  of this would have happened."  You are going to be

9  completely free to make that argument, right?

10         MR. LEVENTHAL:  We will.  But right now it's

11  questionable whether a litigation hold was implemented or

12  not.  We've asked them to stipulate that it wasn't, and

13  they refused to.

14         THE COURT:  Okay.  But if they're limited to

15  what's in here, then they're not going to be able to

16  suddenly come up and say, "Well, we had a litigation hold

17  of some particular kind," I guess.

18         MR. LEVENTHAL:  Yes, Judge.  But I suppose if

19  there was a litigation hold so the City, through the law

20  department or the comptroller's office, had a system in

21  place that appropriately preserved evidence when they were

22  aware that litigation was imminent, so there was a

23  litigation hold, and then somehow the NYPD through, we

24  don't know, negligence, gross negligence, willful conduct,

25  did not do anything in response to that litigation hold, I

```
 1                          PROCEEDINGS                    7

 2   think our arguments would be different.

 3              THE COURT:  Okay, so your thought would be if

 4   there would be some element of willfulness, I suppose,

 5   if -- and, again, it's one big entity, the City -- if

 6   there was some litigation hold that some employee of the

 7   City disobeyed and allowed something to get destroyed,

 8   that's the theory?

 9              MR. LEVENTHAL:  Or if the NYPD had no system in

10   place to properly preserve evidence that was subject to a

11   litigation hold.

12              THE COURT:  Well, now we're back to what I said,

13   which is you're going to be free to argue, you know, they

14   didn't do what they had to do to make sure these notes

15   weren't -- it's the notes that were destroyed, right?

16              MR. LEVENTHAL:  Yes.

17              THE COURT:  Okay.  They didn't do what they had

18   to do to ensure the notes were not destroyed.  The City

19   has now said it did, I -- you said everything you did that

20   would prevent those notes from being destroyed; I mean, is

21   it all in here?

22              MS. WILSON:  Yes, that's correct, your Honor.

23              THE COURT:  All right, so they said everything

24   they've done.

25              And then I'm still back to where I am, which is
```

1

2    you're free to argue that wasn't enough.

3             MR. LEVENTHAL:  One moment, Judge?

4             THE COURT:  Yes, sure.  Take your time.

5             MR. LEVENTHAL:  So, Judge, the only issue is, as

6    you described, is the ability for us to explore, discover

7    whether there was any evidence that this was willful or

8    not.

9             THE COURT:  Okay, so let me just think about

10   that issue.  So -- but I guess -- all right, so the theory

11   is that maybe there's a litigation hold; they've elected

12   not to tell us about it; and then if someone at the NYPD

13   knew about that hold and then disobeyed it, that that

14   would create a different argument regarding spoliation,

15   rather than if they just failed to, you know, negligently,

16   I guess, failed to do anything to preserve the documents,

17   that's the theory?

18            MR. LEVENTHAL:  I think so, yes, your Honor.

19            THE COURT:  Okay, Ms. Wilson, do you want to

20   address that?

21            MS. WILSON:  Well, first I would just say that in

22   Detective Fernandez's declaration, as well as in his

23   testimony at his deposition, he did both describe what his

24   general practice was with the preservation of handwritten

25   notes that he might have taken.

```
 1
 2            Additionally, I'd also like to point out that,
 3   although he did say that he took down some type of
 4   information regarding the pedigree of these individuals,
 5   he was unable to recall whether or not there were any
 6   substantive notes that he took at all, either in his
 7   deposition or in his declaration.
 8            Regardless, I think that it's clear from
 9   Detective Fernandez's declaration that he was never asked
10   to turn these notes over until I believe it was February
11   of 2019.  And we would argue that the plaintiff --
12            THE COURT:  Hold on.  And where is that in the
13   affidavit that makes that clear?
14            MS. WILSON:  I'm sorry, your Honor, let me
15   just --
16            THE COURT:  Take your time.
17            MS. WILSON:  It's in paragraph 10 of --
18            THE COURT:  Right.  "I have not been asked --"
19            Well, this sort of answers your litigation-hold
20   question, which is -- I mean, so you're saying is it the
21   case that being asked meant that no litigation hold had
22   been communicated to him?  That's what -- when he says he
23   wasn't asked --
24            MS. WILSON:  I mean, I --
25            THE COURT:  It's a fair implication, I guess.
```

1

2  So tell me -- okay, so the theory is that he was never

3  told anything prior to February 2019 about these notes?

4          MS. WILSON:  Yes, that's correct.

5          THE COURT:  Okay.  So that would have to include

6  a litigation hold at least made it to his attention.

7          So, I mean, let me just ask you:  Is there a

8  litigation hold?  Is that a thing or not?  To use the

9  modern parlance.

10         MS. WILSON:  I mean, I think that in this

11 particular matter I'm not sure that a hold was issued,

12 certainly not with respect to Detective Fernandez's notes,

13 which is the subject that we're speaking about today and

14 which is the subject of any type of a spoliation sanction

15 or a potential spoliation motion for sanctions.

16         THE COURT:  Does that mean that the -- I don't

17 know, here's what I'm wondering.  I mean, if you have

18 some -- I guess two things -- if you have some practice of

19 issuing a litigation hold and that for some reason it

20 didn't happen in this case, I think they should know about

21 it.  Can you address that question further?  Maybe not now

22 but through an affidavit.  Do you understand what I'm

23 getting at?  Because if you have a normal case, then the

24 question becomes why -- you would need some explanation of

25 why it didn't happen in this case.

 1

 2          MS. WILSON:  Well, your Honor --

 3          THE COURT:  That's the first thing.

 4          And then the second thing is -- maybe we've

 5  answered -- but if there was a litigation hold given to

 6  someone who is a superior, I guess, and the someone says,

 7  "Oh, you know what, yeah, we got this notice from the law

 8  department, but I don't want anyone finding out about this

 9  incident, so I'm not going to communicate to any of my

10  underlings that I got a litigation hold; hopefully, all

11  the documents will get destroyed," it might be relevant

12  for that purpose.  So that seems to be relevant.  And

13  maybe we could just have a supplement as to the

14  litigation -- it seems to me maybe we do need a supplement

15  as to at least anything that would have preserved these

16  notes.

17          MS. WILSON:  Would that be, for example, a

18  supplement regarding whether those notes were ever

19  requested prior to February 2019?

20          THE COURT:  In any form, including -- well,

21  remember I said two things.  One is, you know, is it the

22  usual practice to have a directive that might have saved

23  these notes; who does it; and if it wasn't done here, why

24  wasn't it done; and if it was done, why didn't it get

25  communicated to Fernandez?

1

2          MS. WILSON:  Well, I would point out that

3    Detective Fernandez did state that it is his general

4    practice, as I believe it is the general practice of other

5    investigators in the NYPD, to retain their notes due to,

6    for example, their obligations under *People v. Rosario*.

7    He does say that it was his practice to maintain notes

8    that he took in this case.  So --

9          THE COURT:  But that's not answering my

10   question, really.

11          So tell me what the objection is to giving an

12   affidavit from somebody that says -- and maybe it's two

13   people; maybe it's from you and someone else -- that just

14   says, "Here's our practice for calling a litigation hold

15   in a case like this insofar as it would have reached the

16   notes that Fernandez took."  And then you'll either say

17   well, we did or we didn't do it.  And if you didn't do it,

18   you can explain why you didn't do it -- maybe someone

19   forgot.  If you did do it, you have to explain how it

20   happened that that wasn't enough to cause him to be told

21   prior to 2019 or somebody to be told to preserve these

22   notes.  Do you understand?

23          MS. WILSON:  Yes, I do, your Honor.

24          Would this only be with respect to the limited

25   issue of Fernandez's notes, given that Fernandez's notes

1

2 are the only --

3          THE COURT:  That's the only spoliation issue,

4 right?  That's the only thing that got spoliated right?

5          MR. LEVENTHAL:  It is the only thing that got

6 spoliated, Judge.  But we do argue that the failure to

7 timely disclose the radio transmissions resulted from the

8 failure to preserve the original copy of the radio

9 transmission.  If they would have been preserved through a

10 preservation hold, then we believe they would have been

11 turned over timely.

12          THE COURT:  Right.  But that's not spoliation; I

13 mean, that's delay.  I think you have what you need on

14 delay, so I'm not going to -- you know, the delay is the

15 delay.

16          MR. LEVENTHAL:  So, yes, Judge, then it is just

17 the notes.  But it's strange to us that the City's trying

18 to talk about just preservation of notes.  Clearly, the

19 City's not just preserving Detective Javier Fernandez's

20 notes if they're doing any type of preservation after the

21 Notice of Claim was filed.

22          THE COURT:  I strongly doubt that, if there is a

23 preservation notes, it's as to the notes; I agree.  And I

24 doubt we're going to find that out.  But to the extent

25 that they do two notice -- you know, a preservation notice

```
 1
 2  as to something totally different that wouldn't have
 3  covered the notes, I just don't want to go down that road.
 4          So, anyway, you've answered my questions, the
 5  notes.  So when can we get such an affidavit or
 6  affidavits?
 7          MS. WILSON:  Would two weeks be all right, your
 8  Honor?
 9          THE COURT:  Well, these people are all primed up
10  right now, aren't they?  How about a week?  Do you want to
11  try for week, and if you can't do it, you'll tell me why
12  and then we'll see where we are?
13          MS. WILSON:  All right.  Thank you, your Honor.
14          THE COURT:  You look skeptical.
15          I'm hopeful.  May 6.
16          Okay, hopefully, that's going to be the end of
17  it.  I think I've now ruled on what you've asked me to
18  rule on.  Is there anything else you think we need to do
19  today?
20          MR. LEVENTHAL:  Well, Judge, the other part of
21  it, the collection, are we just proceeding with the fact
22  that they have not done anything else -- so, in other
23  words, it appears to us that what the City is saying is
24  the NYPD did not conduct any independent investigation
25  into their files to turn over any relevant discovery
```

```
 1
 2    That's what the affidavit seemed to read to me.  However,
 3    when we broached this topic with Ms. Wilson and asked her
 4    to confirm or stipulate that this is everything the NYPD
 5    has done, the City refused to do that.
 6               THE COURT:  I think I'll get her to say right
 7    now are there any other efforts that were made to collect
 8    with respect to the matters that are described in these
 9    affidavits other than what's described in the affidavits?
10               MS. WILSON:  As to the matters described in the
11    affidavits -- and I just want to make it clear that that
12    is what we are speaking about -- these are the collection
13    efforts that were made with respect to those documents.
14               THE COURT:  Okay.
15               MR. LEVENTHAL:  And the way they're parsing this
16    out is a concern because we would think, from our side,
17    that when this lawsuit comes in, the attorneys would send
18    over some type of general memo to the NYPD, "We've
19    received litigation, there's litigation regarding death on
20    this date; please collect all documents."  The City is
21    really focusing on specific requests for specific
22    documents.  So --
23               THE COURT:  I didn't think we were down a road
24    which is the road one might take, you know, in the middle
25    of discovery to, you know, ask, you know, have we done
```

1

2   everything possible to collect all our documents.  I

3   understood we were down a road where we're trying to deal

4   with spoliation and we're trying to deal with why there

5   was a delay in producing something.  But what you're

6   talking about, I just don't think it's worth delaying this

7   case even further to now go through the whole process of

8   what was done for collection.

9        MR. LEVENTHAL:  Well, no, Judge, we don't want

10  the whole process of what was done for collection.  I

11  guess what we just want answered is whether the NYPD did

12  anything on their own to locate any documents discoverable

13  for this case or if they simply relied on their attorneys

14  to request documents.  It appears from the affidavits --

15       THE COURT:  But, I mean, I'm sympathetic to the

16  City's view.  This is one process.  You know, it's --

17  that's the way document production works.  So pretend it's

18  a corporation.  The lawyer goes to the corporation and

19  says, "What have you got?  I want you to do this, want you

20  to do that."  There's a collaborative effort, and then

21  it's produced.  And people don't come in and say, "Okay,

22  corporation, what did you do independent of the attorney

23  to collect these documents?"  That's not a road I've

24  normally gone down.

25       MR. LEVENTHAL:  Well, and that's how we see it,

1

2  that there would have been some collaboration between the

3  two to locate documents.  What the City is saying now,

4  apparently, is that there was no collaboration until

5  December of 2018, when Judge Castel ordered an affidavit

6  on the destruction of evidence.  And then all of a sudden,

7  the NYPD began collaborating with their attorneys and

8  figured out, *Hey, there are these other documents out*

9  *there that we don't seem to have ever collected or turned*

10  *over.*  So if that's the case, we just want to know that

11  those are the facts, that the NYPD simply provided --

12  prior to December of 2018, the NYPD simply provided its

13  attorneys with what its attorneys asked for.

14          THE COURT:  Well, I think Ms. Wilson has

15  described what she did to collect documents, and I assume

16  this is the whole story.

17          So, Ms. Wilson, I think the parsing is not as

18  nefarious as you think.  We ask questions about what would

19  lead to the collection of the tapes and the notes and

20  whatever the investigator files, whatever that was.  And

21  there's a broader story that goes with it, which she

22  describes.  And then we get to how we ended up just with

23  these documents.  That's the whole story.  Ms. Wilson, I

24  assume that's the whole story as to these documents; is

25  that right?

```
 1                          PROCEEDINGS                   18
 2              MS. WILSON:  Yes, that's correct, your Honor.
 3              And I would just note that whether there are
 4  efforts to collect documents that were timely produced
 5  really has very little bearing on our efforts to -- on
 6  whether or not it's sanctionable that we produced
 7  documents late, as well.
 8              THE COURT:  So you're going to make your
 9  motions.  And if they come up with new facts that aren't
10  in here, someone's got to come back to me.  We'll deal
11  with it.  I mean, I can't believe it's going to happen.
12  But this is now your set of facts, and it will rise and
13  fall -- or their position and your position will rise and
14  fall on those.
15              Mr. Leventhal, anything else?
16              MR. LEVENTHAL:  Judge, the last point is just
17  that the declarations indicate that Ms. Wilson requested
18  the 44th Precinct Detective Squad file from the NYPD.  And
19  there's no explanation of why the NYPD did not produce it.
20  Ms. Wilson indicates that she didn't follow up on it,
21  but --
22              THE COURT:  You want to figure out why they
23  didn't produce it?
24              MR. LEVENTHAL:  It was requested, and they didn't
25  produce it.  So there's no facts as to why that was not
```

```
 1                         PROCEEDINGS                    19
 2   produced by the NYPD in response to the attorney's
 3   request.
 4              THE COURT:  Okay.  So, Ms. Wilson, you asked, if
 5   I recall from your affidavit, you asked someone to produce
 6   that file, and it didn't happen.  And you then followed up
 7   a long time later, is that right?
 8              MS. WILSON:  Well, your Honor, first I would note
 9   that we -- just to be very clear -- we didn't request the
10   Detective Squad file; we requested any DD-5s -- those are
11   complaint follow-up reports -- related to this incident
12   from the squad --
13              THE COURT:  And do you think that would not have
14   been understood to include notes, is that your point?
15              MS. WILSON:  No.  I'm just making clear that we
16   didn't actually request the file itself.
17              Additionally, the reason that --
18              THE COURT:  No, but why is that important?  I'm
19   sorry.  Is that --
20              MS. WILSON:  Because, while they're similar,
21   they're not exactly -- they're not exactly the same thing.
22              THE COURT:  Okay, did they produce the DD-5s
23   timely?
24              MS. WILSON:  No, they did not, your Honor.
25              THE COURT:  Okay.  All right.  So --
```

```
 1                           PROCEEDINGS                    20
 2              MS. WILSON:  But I just wanted to make that
 3    clear.  It's a small distinction, but it is a distinction.
 4              Additionally, as we told plaintiff's counsel on
 5    the phone, the individual who was handling processing
 6    these requests at NYPD has since retired.  And I think
 7    that any information that we would be providing --
 8              THE COURT:  So the person you asked from is not
 9    working at the NYPD?
10              MS. WILSON:  That's correct, your Honor.
11              And I think that, if anything, it would be --
12    any explanation for why the DD-5s were not produced to us
13    would be entirely speculative.
14              THE COURT:  Well, not if you could find that
15    person.
16              MS. WILSON:  Well, I'm not certain that she would
17    be able to recall the specific document that she requested
18    six years ago.  And, you know, the fact of the matter is
19    that I failed to follow up on those --
20              THE COURT:  Well, they also failed to produce
21    it.  Is that a common occurrence?
22              MS. WILSON:  And --
23              THE COURT:  Ms. Wilson?
24              MS. WILSON:  I'm sorry?
25              THE COURT:  They also failed to produce it.  Is
```

1
2    that a common occurrence?

3           MS. WILSON:  I can't really speak to that.

4           But, regardless, I would say that the -- that it

5    would really be speculation as to why we didn't receive

6    that document.  And, you know, again, the fact of the

7    matter is that it was not timely produced.  And I think

8    that that's really all that plaintiff --

9           THE COURT:  So this ultimately was produced?

10          MS. WILSON:  Oh, yes, yes, it was.

11          THE COURT:  All right, I mean, Mr. Leventhal, the

12   difference -- I mean, I think we've reached a realm that,

13   you know, your motion, the important part of your motion

14   is that you had to wait three years and the Court had to

15   wait three years.  And I think -- I agree that trying to

16   find this retired person is not a fruitful road as just a

17   matter of proportionality to your needs.  So I think we're

18   going to leave it at that, Mr. Leventhal.

19          MR. LEVENTHAL:  May I, your Honor?

20          THE COURT:  Certainly.

21          MR. LEVENTHAL:  I agree, Judge, that trying to

22   find this person would be a waste of time and energy.  But

23   we would think that there would be some type of systems or

24   records in place to show us what happened to this request;

25   or if there was no system or records in place with these

PROCEEDINGS                                22

1  requests from the law department --

2

3          THE COURT:  But -- okay, your best-case scenario

4  is -- I'm not sure what your best-case scenario is, but

5  based upon what we have so far, a request is made.  Maybe

6  there's some log that says Ms. Wilson asked for this, and

7  then there's a blank to the right that says no one ever

8  followed up on it.  I mean, I'm just trying to figure out

9  what that gets you that's any more important than the fact

10 that it took three years for them to get it to you.

11         MR. LEVENTHAL:  Well, we just don't know if the

12 system is not an appropriate system to deal with these

13 requests, if they don't have any record-keeping or check

14 or balance to make sure that they follow up on these

15 requests.  You know --

16         THE COURT:  So you want to know what the system

17 was?

18         MR. LEVENTHAL:  Or any records or documents

19 showing what happened to this request, why it was not

20 fulfilled.

21         THE COURT:  And how is it going to help you,

22 beyond the fact that it was three years late, to know

23 that?

24         MR. LEVENTHAL:  I think it could rise from a

25 negligent situation to a gross negligence to a

1

2    willfulness.

3           THE COURT:  Okay, but, again, we're not in this

4    spoliation land.  This was not spoliated evidence, as I

5    understand it.  This is stuff you got.

6           MR. LEVENTHAL:  Well, maybe the --

7           THE COURT:  I'm not sure -- I understand those

8    levels for spoliation, but not for just these people

9    delayed me for three years.

10           MR. LEVENTHAL:  Then it's a matter -- yes, Judge,

11   under Rule 37, it's still their explanation as to what the

12   reason for the delay is is still something that needs to

13   be analyzed.  And if the explanation is that we requested

14   it -- our attorneys requested it, and we didn't have any

15   system in place to deal with these attorney requests

16   properly, I think that might be not nearly as good an

17   explanation as to 99 out of 100 times we fulfill these

18   requests, and this is the one that slipped through the

19   cracks.

20           THE COURT:  Ms. Wilson?

21           MS. WILSON:  Your Honor, I would just point out

22   that, again, we're in the realm of discussing a late

23   production rather than a spoliation issue.  To that, I

24   think that both plaintiff acknowledges and certainly we

25   would agree that it is defendants' burden to argue

1

2  substantial justification, which I think would encompass

3  these kind of --

4           THE COURT:  I'm sorry, what --

5           MS. WILSON:  Substantial justification for the

6  delay in our production.  So to the extent that we're

7  arguing that the steps that we took were reasonable and

8  harmless, it's on defendants to argue it.  And I don't

9  think that it's really necessary to begin to reach the

10  specifics of why this request wasn't fulfilled at the

11  time, given that no one disagrees that it wasn't fulfilled

12  at the time and that I as the attorney for the law

13  department did not follow up on it.

14           THE COURT:  I mean, I'm of two minds.  I mean, I

15  think there -- unless you're prepared to concede that there

16  was, you know, no system in place, which I suspect you're

17  not, then --

18           MS. WILSON:  Your Honor --

19           THE COURT:  Go ahead.

20           MS. WILSON:  I mean, I'm just not sure what saying

21  something like, for example, as you said, saying something

22  like, "Ms. Wilson made this request.  It was received and

23  logged.  No response was ever received," I'm not sure how

24  that --

25           THE COURT:  So but I think it would be different

1

2   if in fact there is no log system.  And that would show

3   kind of a greater degree of negligence if in fact the

4   precinct takes calls and then they just hope they remember

5   at the end of the month which calls came in, as opposed to,

6   you know, having a system that writes it down and makes

7   sure it gets responded to.  That's the difference.

8           MS. WILSON:  But I don't think that that's really

9   sort of what's at issue here.  I think what's at issue here

10  is just the late production of these specific documents --

11          THE COURT:  Well, if you're willing to concede

12  that the failure to produce it was the result of, you know,

13  whatever -- I don't think there's any theory on which it's

14  going to be intentional but was, you know, grossly

15  negligent -- and they're free to argue that.  I don't think

16  you want to do that.  They want to be able to say that.

17  They want to be able to say there was no system -- they're

18  hoping, maybe -- there was no system in place, and it was

19  not reasonable to have a system where the attorney has to,

20  once they make their request, is expected to remember or

21  follow up on every single request they make, and that was

22  guaranteed to lead to delays.  They want to be able to make

23  that argument.

24          So if you have a system that at least logs it and

25  someone back at the precinct is supposed to respond to it

PROCEEDINGS                                                    26

1

2  within X number of days, if there is such a system, it

3  doesn't seem very burdensome if there's someone there now

4  to describe what the system was.  And if there wasn't a

5  system, I think they probably should know about it.  So I

6  understand that one's a little harder.

7        Why don't I give you to the end of next week on

8  that one, May 10?  But someone -- if there is a

9  "someone" -- should describe what the system was for

10  dealing with a request of the kind that you made at the

11  time.  And if there's any explanation for why it didn't

12  happen here, great.  It sounds like there won't be, since

13  we don't have the particular person involved.  I think

14  these are very limited areas, and they should not be hard

15  to produce an affidavit on them.

16        Okay, so do you understand the requests,

17  Ms. Wilson -- the direction, Ms. Wilson?

18        MS. WILSON:  I would appreciate it if the Court

19  could just give me specific instructions as to both.

20        THE COURT:  Well, the first one, hopefully it's

21  in the record.  The one we just did -- well, you don't say

22  in paragraph 25 when you made this request, because I was

23  about to say at the time you made the request -- do you

24  know when you made the request?

25        MS. WILSON:  The request was made in, I believe,

```
 1                          PROCEEDINGS                    27
 2   the very end of June 2015 or the very beginning of July
 3   2015.
 4            THE COURT:  Oh, it's the incident in July 2015 --
 5   I'm sorry, I thought it said "of July 2015."  Okay, so it's
 6   July 2015.
 7            So as of -- which what I need is an affidavit that
 8   describes as of July 2015 what the process was in the 44th
 9   Precinct's Detective Squad -- if that's who you asked -- or
10   whoever it was you did ask -- what the process was for
11   responding to requests of that kind.
12            MS. WILSON:  As described by Ms. Daitz's
13   affidavit, the requests made by the law department go
14   through the civil litigation unit.
15            THE COURT:  So that's who you requested?
16            MS. WILSON:  Yes, that's correct, your Honor.
17            THE COURT:  Okay.  And do we have a description
18   of what process they used?  Is that what we're missing?
19   They have a lot of generic language.  I think we need
20   something specific as to what the process was to
21   communicate that or to get it from the 44th Precinct and,
22   you know, whether there's a record of it; you know, just
23   take us through the process.  Okay.  Understood?
24            MS. WILSON:  Yes.  Thank you, your Honor.
25            MR. LEVENTHAL:  May I, your Honor?
```

```
 1                           PROCEEDINGS                    28

 2               THE COURT:  Sure.

 3               MR. LEVENTHAL:  And what they did in this

 4     particular case, as well.

 5               THE COURT:  Yes.  And if you have anything

 6     information in this particular case, definitely put that

 7     in.  But even if you don't, what the normal process is.

 8               Okay, Mr. Leventhal, anything else for today?

 9               MR. LEVENTHAL:  One moment, Judge?

10               THE COURT:  Sure.

11               MR. LEVENTHAL:  Nothing further.  Thank you,

12     Judge.

13               THE COURT:  Anything from the City?

14               MS. WILSON:  Nothing further, your Honor.

15               THE COURT:  All right.  Thank you, everyone.

16               (Whereupon, the matter is adjourned.)

17

18

19

20

21

22

23

24

25
```

29

# C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Brown et al v. The City of New York et al, Docket #15-cv-04091-PKC-GWG, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

                  Carole Ludwig

Date:    May 1, 2019